PARIENTE, J.
We have for review N.S.H. v. Department of Children & Family Services, 803 So.2d 877 (Fla. 5th DCA 2002), a decision of the Fifth District Court of Appeal on the following question, which the court certified to be of great public importance and which we have rephrased:
ARE THE ANDERS[1] PROCEDURES APPLICABLE TO CRIMINAL CASES *900 TO BE FOLLOWED IN CASES INVOLVING TERMINATION OF PARENTAL RIGHTS?[2]
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We conclude that Anders procedures do not apply to termination of parental rights cases and, therefore, answer the rephrased certified question in the negative.

The Anders Framework

In 1967, the United States Supreme Court decided Anders and held that counsel appointed to represent an indigent criminal defendant could not withdraw from representation during the appeal by merely advising the appellate court in a letter that the appeal had no merit. See 386 U.S. at 744, 87 S.Ct. 1396. The An-ders case was part of “a continuing line of cases [that had] reached [the United States Supreme] Court concerning discrimination against the indigent [criminal] defendant on ... first appeal.” Id. at 741, 87 S.Ct. 1396. In order to protect the indigent criminal defendant’s right to appellate counsel established in Douglas v. California, 372 U.S. 353, 357-58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the Supreme Court set forth a procedure to be used in those cases where appointed counsel determines an appeal to be “wholly frivolous”:[3]
[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.
That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel’s brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel’s request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.
Anders, 386 U.S. at 744, 87 S.Ct. 1396 (emphasis supplied).
In 1971, this Court adopted the precise procedure set forth in the original Supreme Court opinion in Anders for criminal appeals in this state. See State v. Wooden, 246 So.2d 755, 757-58 (Fla.1971), abrogated on other grounds, State v. District Court of Appeal, 569 So.2d 439, 442 (Fla.1990); see also In re Anders Briefs, 581 So.2d 149 (Fla.1991). The Supreme Court has since clarified that the procedure set forth in Anders is “merely one method of satisfying the requirements of the Constitution for indigent criminal ap *901 peals.” Smith v. Robbins, 528 U.S. 259, 276, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).
Although this Court has not yet reevaluated its current Anders procedures in light of Smith, this Court recently extended the use of the Anders procedure to appeals of involuntary civil commitment to a mental health facility where an individual’s physical liberty is at stake. See Pullen v. State, 802 So.2d 1113, 1120 (Fla.2001). The issue now before us is whether this Court should mandate Anders procedures in termination of parental rights appeals, which would require the appellate court to conduct an independent review of the record in cases where appointed counsel has concluded that an appeal would be frivolous.

Analysis

In this case, the Fifth District granted the appointed attorney’s motion to withdraw from representation of a parent in a termination of parental rights case, after that attorney determined in good faith that there were no valid issues to appeal and that any appeal would be frivolous. See N.S.H., 803 So.2d at 878-79. However, in light of this Court’s opinion in Pullen, the Fifth District certified the question to this Court as to whether the Anders procedures should be followed in termination of parental rights proceedings.
Before our decision in Pullen, those district courts of appeal addressing the issue had concluded that the Anders procedure for criminal appeals was not applicable to termination of parental rights cases. In Ostrum v. Department of Health & Rehabilitative Services, 663 So.2d 1359 (Fla. 4th DCA 1995), the Fourth District held that “the full panoply of Anders procedures” is unnecessary in the appellate review of these cases. 663 So.2d at 1361. The Fourth District also found that the need to resolve issues involving the legal status of children quickly and to refrain from unduly burdening the caseload of the appellate courts weighed against imposition of the more time consuming Anders procedures. See id. The Second, Third, and Fifth Districts have likewise declined to extend An-ders to termination of parental rights cases. See In re K.W., 779 So.2d 292, 294 (Fla. 2d DCA 1998); In re J.A. 693 So.2d 723, 724 (Fla. 5th DCA 1997); Jimenez v. Dep’t of Health & Rehabilitative Servs., 669 So.2d 340, 341 (Fla. 3d DCA 1996). We agree with the district courts of appeal that Anders procedures should not be mandated in termination of parental rights cases.
The Anders decision addressed the specific issue of the indigent criminal defendant’s right to a meaningful first appeal. See 386 U.S. at 741-42, 87 S.Ct. 1396. N.S.H. has cited no research, and we are unaware of any research, that indicates that the same concerns in criminal appeals that led to the Anders decision are present today, more than thirty years later, in termination of parental rights proceedings so as to mandate comparable appellate oversight.
As stated above, the Anders procedures adopted in this state require that counsel set forth in a brief “anything in the record that might arguably support the appeal.” Wooden, 246 So.2d at 758 (quoting Anders, 386 U.S. at 744, 87 S.Ct. 1396). These procedures then require “the court ... after a full examination of all the proceedings, to decide whether the case is wholly frivolous.” Id. at 758, 87 S.Ct. 1396 (quoting Anders, 386 U.S. at 744, 87 S.Ct. 1396). Absent the compelling concerns expressed by the United States Supreme Court in Anders, we cannot justify thrusting appellate courts into a position that represents a departure from the court’s traditional role as a neutral decision maker. As the Fourth District aptly observed:
*902 Anders represents a radical departure from the traditional role of appellate judges as neutral decision makers without bias or prejudice for or against any party. Instead, it turns them into advocates for the party whose counsel seeks to withdraw. Whatever may be the rationale for requiring that departure from neutrality in criminal cases, we are quite unwilling to allow it in purely civil matters.
Ostrum, 663 So.2d at 1361; see also In re Anders Briefs, 581 So.2d at 151 (stating that once a motion to withdraw is filed and the defendant is given the opportunity to file a pro se brief, “[t]he appellate court ... assumes the responsibility of conducting a full and independent review of the record”).
Although we do not minimize the significant interests at stake in parental rights termination proceedings, the essential difference between termination proceedings and both criminal proceedings and civil commitment proceedings is that termination proceedings do not involve the risk of loss of physical liberty. Further, there are two interests that must be weighed in a termination proceeding: that of the parent and that of the child.[4] The Fourth District recognized both of these distinguishing factors in Ostrum when it noted that termination of parental rights “cases are not criminal in nature. They are civil proceedings which happen to affect the substantial interests of the parents and children involved.” 663 So.2d at 1361.
In addition, the records in termination of parental rights cases are often extensive and extremely fact-based.[5] This contrasts with the typical case in a criminal Anders appeal[6] and with this Court’s observation in Pullen as to the civil commitment proceeding at issue in that case:
The State noted in both its brief and at oral argument that civil commitment hearings under the Baker Act are “usually brief and factually straightforward” and “[v]ery rarely is the person’s mental illness contested.” Instead, the State contends, “the most common points on appeal” assert that evidence as to the person’s likelihood to harm himself or others does not meet the clear and convincing standard. Thus, we do not agree with the State’s contention that the independent appellate court review which is part of the Anders-type procedure will cause an undue burden to the court or result in unnecessary delay.
Pullen, 802 So.2d at 1120. Requiring appellate courts to review extensive fact-based records in termination of parental rights cases to determine whether there are any meritorious issues to appeal would *903 add to both the burden placed on the appellate courts and the delay in bringing the termination of parental rights proceeding to conclusion without a concomitant showing of need to protect the constitutional rights of parents.
Although we recognize that “mere speed of operation and speed for the purpose of expediency,” concurring in result op. at 20, do not outweigh other important values of our system of justice, such as a fair opportunity for an indigent parent to pursue a meaningful appeal of an order terminating parental rights, we do not believe that extending Anders procedures to termination of parental rights appeals serves those higher values. Further, considering the three-factor test of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), we conclude that there is no due process violation in failing to require that the Anders procedure be followed in appeals from termination of parental rights proceedings.[7] Cf. M.W. v. Davis, 756 So.2d 90, 97 (Fla.2000) (“[T]he extent of procedural due process protections varies with the character of the interest and nature of the proceeding involved.”) (quoting In re D.B., 385 So.2d 83, 89 (Fla.1980)). Accordingly, we decline to extend the Anders procedure to termination of parental rights proceedings. We conclude that the procedure is not constitutionally mandated and any potential benefits from the Anders procedure in the context of termination of parental rights proceedings are outweighed by the delay in the disposition of the case and the consequent potential detriment to the child from any additional delay in finalizing the permanent placement of the child.
We next address what procedure should be followed when appointed counsel seeks to withdraw from representation of an indigent parent in a termination of parental rights appeal. The Fourth District adopted the following procedure:
It will be enough for appellate counsel to file a motion seeking leave to withdraw as counsel for the parent whose rights have been terminated.... [WJhere appellate counsel seeks leave to withdraw, we can then give the party a period of time in which to argue the case without an attorney. If the party then fails to file a brief within the time period granted for that purpose, we will conclude that the party no longer wishes to prosecute the appeal and dismiss for failure to prosecute. If the party has filed a brief, we will review the brief and if it fails to present a preliminary basis for reversal we will summarily affirm under rule 9.315. When we find that the party’s brief presents a preliminary basis for reversal, the case will then proceed as any ordinary appeal.
Ostrum, 663 So.2d at 1361. The procedure enunciated by the Fourth District in Ostrum does not explicitly state that appellate counsel’s motion to withdraw must contain a certification that he or she has conducted a conscientious review of the record and could find no meritorious grounds on which to base an appeal. However, we interpreted Ostrum as including this requirement in our decision in Pullen, see 802 So.2d at 1114, and this requirement is consistent with the Fifth District’s decision in N.S.H.:
*904 [W]e shall adhere to the Ostrum procedure which requires service of a motion to withdraw on the client, certification in that motion to this court that counsel in good faith has discovered no valid error below, and an opportunity for the client to file a brief on his or her own behalf, or through subsequently retained counsel.
N.S.H., 803 So.2d at 879. Accordingly, we approve the procedures set forth in Ost-rum and N.S.H. As to the certification required, we specifically hold that where appellate counsel seeks leave to withdraw from representation of an indigent parent in a termination of parental rights case, the motion to withdraw shall be served on the client and contain a certification that after a conscientious review of the record the attorney has determined in good faith that there are no meritorious grounds on which to base an appeal. The parent shall then be provided the opportunity to file a brief on his or her own behalf.
Based on the foregoing, we answer the certified question in the negative and approve the decision of the Fifth District Court of Appeal.
It is so ordered.
ANSTEAD, C.J., WELLS and QUINCE, JJ., and SHAW, Senior Justice, concur.
LEWIS, J., concurs in result only with an opinion.
HARDING, Senior Justice, dissents.

. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. The question as phrased by the Fifth District stated:
IN TERMINATION OF PARENTAL RIGHTS CASES, IF AN ATTORNEY APPOINTED TO REPRESENT AN INDIGENT • PARENT BELOW IN GOOD FAITH DETERMINES THAT THERE IS NO VALID ISSUE ON APPEAL, SHOULD THAT ATTORNEY BE PERMITTED TO WITHDRAW PURSUANT TO OSTRUM [V. DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, 663 So.2d 1359 (Fla. 4TH DCA 1995) ], OR BE REQUIRED TO FILE AN ANDERS TYPE BRIEF?
N.S.H., 803 So.2d at 879.

. See Pennsylvania v. Finley, 481 U.S. 551, 554, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (“The holding in Anders was based on the [criminal defendant's] underlying constitutional right to appointed counsel established in Douglas

. In addition, because the two parents are often represented by different lawyers in cases where both parents' rights are terminated, it is entirely possible that the interest of one parent may conflict with that of the other parent.

. The standard of appellate review of these fact-based issues is abuse of discretion, which is essentially a "reasonableness” test. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). "Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable,” and "[i]f reasonable [people] could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.” Id.

.As Judge Warner of the Fourth District Court of Appeal has explained, in many An-ders cases "the defendant has pled to the charge or has been convicted in a relatively short trial.... The issues in such cases involve either the voluntariness of the plea or the sentence. Typically the record is very limited. Judicial review of the record is not time-consuming_” Martha C. Warner, Anders in the Fifty States: Some Appellants’ Equal Protection Is More Equal Than Others’, 23 Fla. St. U.L.Rev. 625, 655 (1996).

. Eldridge sets forth a three-factor test to determine whether the Due Process Clause of the Fourteenth Amendment mandates additional procedures. It instructs that we look to (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation through the procedures used and probable value of substitute procedures; and (3) the Government’s interest, including the fiscal and administrative burden of substitute procedures. See 424 U.S. at 335, 96 S.Ct. 893.